IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JENNIFER HARP,                                                No. 03:15-cv-00168-HZ

        Plaintiff,

        v.                                                    OPINION & ORDER

KAISER FOUNDATION HEALTH PLAN,
INC.,

        Defendant.


Samuel T. Stanke
Attorney at Law, LLC
1400 S.W. Montgomery Street
Portland, Oregon 97201

        Attorney for Plaintiff

Chris Kitchel
John B. Dudrey
STOEL RIVES LLP
900 S.W. Fifth Avenue, Suite 2600
Portland, Oregon 97204

        Attorneys for Defendant


1 - OPINION & ORDER

HERNANDEZ, District Judge:

Plaintiff Jennifer Harp brings this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 (ERISA), against Defendant Kaiser Foundation Health Plan, Inc.[1], seeking payment of medical care expenses denied by her health plan. She also seeks a statutory penalty because Defendant failed to timely provide plan-related documents in response to her request.

Both parties move for summary judgment on the medical expense claim. Plaintiff also moves for summary judgment on the document request claim. I grant Defendant's motion and deny Plaintiff's motion on the medical expense claim because Defendant did not abuse its discretion in denying Plaintiff's medical expenses. I grant Plaintiff's motion on the document request claim in part and award a statutory penalty of $8,540.

BACKGROUND

As a member of the Services Employees International Union Local 49, Plaintiff was entitled to certain benefits pursuant to a benefit plan negotiated between her employer and the Union. Holmes Decl. at ¶ 2. Those benefits included medical coverage as a member of the Kaiser Foundation Health Plan of the Northwest ("the Health Plan"). Id. at ¶ 3.

I.  Plaintiff's Idaho Medical Expenses

In late 2013 and early 2014, Plaintiff and her newborn son obtained medical services from providers in Idaho. Vaughan May 13, 2015 Decl. at ¶ 2; Ex. A to Vaughan May 13, 2015

---

[1]  In her Complaint, Plaintiff named Kaiser Foundation Health Plan of the Northwest ("the Health Plan") as the Defendant. In a Stipulation filed on May 8, 2015, the parties substituted Defendant Kaiser Foundation Health Plan, Inc., the plan administrator for the Health Plan, as the proper Defendant.

2 - OPINION & ORDER

Decl.  In a July 10, 2014 letter to the Health Plan, Plaintiff requested payment for the medical services received in Idaho.  Id.; Ex. A to Vaughan May 13, 2015 Decl. at 5, 7.  Plaintiff attached several "Explanation of Benefits" (EOB) forms to her letter.  Ex. A to Vaughan May 13, 2015 Decl. at 10-20.  The Health Plan had previously sent the EOB forms to Plaintiff in response to Plaintiff's prior submission of the Idaho medical expenses to the Health Plan.  In each case, the EOB stated, as to one or more expenses, that the member was responsible for the billed amount because the service was not a covered benefit or service.  Id.  At least one of the EOBs also stated that the Health Plan denied the claim for payment because an authorization request was required but had not been received.  Id. at 17.   Plaintiff's July 10, 2014 letter was accepted as an appeal of the denials set forth in the EOBs.  Vaughan May 13, 2015 Decl. at ¶ 2.

In an August 8, 2014 letter sent to Plaintiff by Senior Grievance and Appeal Administrator Julie Rich, the Health Plan denied Plaintiff's appeal of the previously-denied claims on the basis that the services were not covered by the Health Plan.  Ex. B to Vaughan May 13, 2015 Decl.  In pertinent part, the letter explained that under Plaintiff's "Kaiser Permanente Large Group Plan Evidence of Coverage" (EOC), covered services must be provided, prescribed, authorized, or directed by a participating physician.  Id. at 2.  The Health Plan provides covered services using participating providers at participating facilities located in the Health Plan's service area except as provided and described in four areas:  (1) referrals to non-participating providers and non-participating facilities; (2) emergency, post-stabilization, and urgent care; and (3) student out-of-area coverage.  Id.  The letter also told Plaintiff that it does not prohibit members from "freely contracting at any time" to obtain health care from non-participating providers and non-participating facilities outside the Health Plan, but, such services are not

covered by the Health Plan and the member is responsible for the full price of such services

unless as otherwise provided in the EOC.  Id.

The letter summarized the denial as follows:

Upon conclusion of our review, there is no contractual basis on which to approve
your request that Kaiser Foundation Health Plan of the Northwest provide
payment for the unauthorized, non-plan services you received.  Therefore, we
have denied your request for claims payment, in accordance with the terms of your
Evidence of Coverage (EOC), which states that if you choose to receive services
from non-participating providers and non-participating facilities without an
authorized referral, except as otherwise stated in your EOC, services will not be
covered.

Id. at 3.

The letter also told Plaintiff that if she wanted a copy of her EOC, she could call

Membership Services and obtain one at no cost.  Id. at 4.  Enclosed with the letter were relevant

sections of the EOC and a document explaining Oregon's Medical Plans External Review Rights.

Id. at 4-11.

II.  Plan Provisions

Exhibits E and F to the Vaughan May 13, 2015 Declaration contain the Group Agreement

between Kaiser and the Union for 2013 and 2014.  Vaughan May 13, 2015 Decl. at ¶ 6.  The

relevant EOC is included within each Group Agreement.  Id.  The Definitions Section includes

definitions for Participating Facility, Participating Hospital, Participating Medical Office,

Participating Physician, Participating Provider, Non-Participating Facility, Non-Participating

Physician, and Non-Participating Provider.  Ex. E to Vaughan May 13, 2015 Decl. at 40-44; Ex.

F to Vaughan May 13, 2015 Decl. at 43-47.  There is also a definition for Urgent Care.  Id.

A separate section entitled "Benefits," establishes that benefits are covered only if the

4 - OPINION & ORDER

services are "provided, prescribed, authorized, or directed by a Participating Physician except where specifically noted to the contrary in this *EOC*." Ex. E to Vaughan Decl. at 58; Ex. F to Vaughan Decl. at 60.  The same section also indicates that some services may require prior authorization.  Id.  In another section addressing "Referrals to Non-Participating Providers and Non-Participating Facilities," the EOC states that prior written authorization is required for services provided by non-participating providers and facilities.  Ex. E to Vaughan Decl. at 52; Ex. F to Vaughan Decl. at 55; see also Ex. E to Vaughan Decl. at 51 (listing referrals to non-participating facilities or non-participating providers as examples of those services requiring prior authorization); Ex. F to Vaughan Decl. at 54 (same).

A separate document called the Summary Plan Description (SPD), also explains that the member "must use Kaiser Permanente providers and plan facilities, except in an emergency or if you obtain special authorization to receive care or services outside the Kaiser Permanente system." Ex. B to Holmes Decl. at 37.  It also states that for "details on your benefit coverage, including a complete list of benefits, services, exclusions, and limitations, refer to your *Evidence of Coverage*, the binding document between KFHP and its members." Id.  It further states that the member may obtain a copy of the EOC by calling Membership Services at the number provided.  Id.  Plaintiff had access to the SPD on demand using any computer with internet capability through an employee website portal using her employee identification and personal password.  Holmes Decl. at ¶ 4.

III.  Document Request

Plaintiff's July 10, 2014 letter included complaints about the care she received from Participating Physicians and Providers at Participating Facilities and Hospitals.  Ex. A to

5 - OPINION & ORDER

Vaughan May 13, 2015 Decl. at 1-7.  The letter also requested compensation for lost wages for the period starting November 25, 2013, when she arrived in Idaho, to April 14, 2014, the date she returned to work.  Id. at 5-7.  Additionally, she sought reimbursement for phone calls and the time she spent assembling materials in support of her claim.  Id. (requesting payment for eleven hours at $22.71 per hour).  Finally, she requested compensation for the pain and suffering she experienced as a result of the allegedly poor quality care, misdiagnosis, delay of diagnosis, and lack of follow-up.  Id.

In response, Member Relations Coordinator Mike Hardash wrote to Plaintiff acknowledging receipt of her letter and informing her of several things, including that some of the previously-unreviewed claims had been forwarded to the Claims Administration Department for processing; that her appeal of denied claims had been assigned to a Member Relations Administrator for coordination of the review; and that her request for compensation was outside the grievance and appeal process as described in her EOC but would be forwarded to the Risk Management Department which would contact her directly.  Ex. C to Vaughan May 13, 2015 Decl. at 10-11 (also informing her that review of her appeal of the denied claims could take up to thirty days and that the review by Risk Management had no regulatory timeframe).  As indicated above, the Health Plan responded to Plaintiff's quality of care complaints and denied her appeal of the previously-denied claims in an August 8, 2014 letter authored by Rich.  Ex. B to Vaughan May 13, 2015 Decl. at 1-11.  The August 8, 2014 letter also told Plaintiff that the compensation request was with the Risk Management Department.  Id. at 3.

The August 8, 2014 letter concluded the internal appeals available to Plaintiff regarding her denied expense claims.  On September 11, 2014, Plaintiff's counsel wrote to Rich at "Kaiser

Permanente" regarding "Unpaid Medical Benefits." Ex. B to Stanke June 24, 2015 Decl. He

identified Plaintiff and included her Health Record Number and the claim numbers for all the

claims at issue. Id. He then identified his office as representing Plaintiff regarding "your refusal

to pay for the above out-of-network services." Id. The last line of the first paragraph of the letter

states, in bold: **"If Kaiser Permanente is not the plan administrator for the above described**

**plan, please notify me immediately who the correct plan administrator is."** Id.

      Plaintiff's counsel stated his understanding that because Defendant's denial of her Idaho

expenses did not involve medical judgment, there was no external review of that decision,

meaning Plaintiff had exhausted administrative appeals and now had the right to file suit against

the above plan under section 502(a) of ERISA. Id. In bold, he requested that he be contacted

immediately if his understanding was incorrect. Id.

      The rest of the letter is devoted to requesting several types of documents:

      (1) complete, certified copies of any and all "Annual Return/Report[s] of Employee

Benefit Plan (IRS Form 5500)" for the plan for years 2012 through 2014, together with any and

all schedules or attachments;

      (2) "the entire file for the above described claim(s)," including "any and all materials

relevant to . . . [the] denial of the above claims, any and all documents and records relied on . . .

in making [the] denial," and names, phone numbers, notes, and more "of any and all persons who

had authority or responsibility for reviewing my client's medical records and/or handling any

aspect of this claim, no matter how minute," including persons named in Rich's August 8, 2014

letter as having been consulted in regard to Plaintiff's complaints about the quality of care she

received in Oregon;

(3) every Summary Plan Description in effect for each year from 2012 through 2013 for the Health Plan, including every plan document, policy, terminal report, bargaining agreement, trust agreement, contract, or other instrument under which the plan was established and/or operated in each year from 2012-2014;

(4) the latest updated Summary Plan Description, the latest annual report, any terminal report, the bargaining agreement, contract, or other instruments under which the plan is established and/or operated, including but not limited to complete, certified copies of the "Kaiser Permanente Large Group Plan Evidence of Coverage" for the years 2012, 2013, and 2014;

(5) any and all documents or correspondence received by Kaiser Permanente from Plaintiff or her health care providers relating in any way to the claims, including but not limited to letters, envelopes, facsimile cover sheets, facsimile confirmation sheets, certified mail receipts, and domestic return receipts; and

(6) any and all documents or correspondence submitted by Kaiser Permanente to Plaintiff or her health care providers relating in any way to the claims, including but not limited to letters, envelopes, facsimile cover sheets, facsimile confirmation sheets, certified mail receipts, and domestic return receipts.

Id.

On November 24, 2014, Teresa Keeney, Claims Management Coordinator, wrote to Plaintiff's counsel regarding the request for compensation for Plaintiff which had been previously received in the Risk Management Department. Ex. C to Stanke June 24, 2015 Decl. Keeney stated that Plaintiff's request had been reviewed and the circumstances evaluated but that the request for compensation was denied. Id. Keeney further stated there was no appeal within the

8 - OPINION & ORDER

Kaiser system.  Id.  Finally, she closed with this statement:  "Lastly, I will not be providing you the additional data you requested.  Should you decide to proceed with litigation, that information would be part of the discovery process."  Id.

Rich's August 8, 2014 letter to Plaintiff had informed Plaintiff that if she wanted a copy of the "actual benefit provision, guideline, protocol, or similar criterion on which the denial was based, at no cost" to her, she should call Member Relations at the included phone number.  Ex. B to Vaughan May 13, 2015 Decl. at 4.  Rich's August 8, 2014 letter also told Plaintiff that a copy of her EOC was available to her at no cost and if she would like a copy, she should call Membership Services at the included phone number.  Id.  Rich expressly invited Plaintiff to call her at a particular phone number if she had any questions.  Id.

Despite the previous invitation to call Rich with questions and the fact that Rich herself never responded to Plaintiff's counsel's September 11, 2014 letter, neither Plaintiff nor her counsel contacted Rich again, either before or after Keeney's November 24, 2014 letter denying her compensation request and informing her that "additional data" was not forthcoming.  Plaintiff filed this action on January 30, 2015.  Although it is unclear from the docket exactly when the Health Plan was served, the Health Plan, at that time the named Defendant, filed an Answer on February 24, 2015.  That same date, the Health Plan filed its corporate disclosure statement, stating that it is "an affiliate of Kaiser Foundation Health Plan, Inc. and has no stock."  ECF 5.  As previously noted, on May 8, 2015, the parties stipulated to substitute Defendant for the Health Plan as the proper Defendant.  ECF 6.

On February 12, 2015, before the Health Plan filed its Answer, Plaintiff's counsel received from the Health Plan's counsel several plan-governing documents.  See Stanke June 24,

9 - OPINION & ORDER

2015 Decl. at ¶ 6.[2]  On February 23, 2015, the Health Plan's counsel delivered to Plaintiff's

counsel 102 pages of documents.[3]  Stanke June 24, 2015 Decl. at ¶ 7.  On March 26, 2015,

Plaintiff's counsel received from the Health Plan's counsel an additional twenty-seven pages of

documents.  Ex. A to Stanke June 24, 2015 Decl.; see also Stanke June 24, 2015 Decl. at ¶ 3

(stating Exhibit A is the 27 pages Plaintiff's counsel received from the Health Plan's counsel via

email on March 26, 2015).

STANDARDS

I.  Medical Expense Claim

     Traditionally, summary judgment is appropriate if there is no genuine dispute as to any

material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

---

[2]  The Court notes that while Plaintiff states in her Memorandum in Support of her Summary Judgment Motion that the Health Plan's counsel emailed "several plan-governing documents" to Plaintiff's counsel, "i.e., the Plan's 2013 5500 forms, 2013 and 2014 [EOCs], a 'Benefits in Brief' pamphlet, a collective bargaining agreement, a summary of benefits and coverage, and a Summary Plan Description," Plaintiff's Memorandum cites no support for this assertion.  Pl.'s Mem. at 6.  Moreover, Plaintiff's counsel's June 24, 2015 Declaration states only that Exhibit D to the Declaration is a "true copy" of the 2013 Form 5500s for the Health Plan emailed to him by defense counsel on February 12, 2015.  Stanke June 24, 2015 Decl. at ¶ 6.  This statement does not provide evidence of the fact that defense counsel sent Plaintiff's counsel any document other than the 5500s on February 12, 2015.  Defendant does not appear to dispute that all of the documents Plaintiff refers to in her Memorandum were emailed to Plaintiff's counsel on February 12, 2015.  In other cases, the lack of evidence to support a factual assertion could be more problematic.

[3]  Plaintiff's Memorandum cites to Exhibit E of Stanke's June 24, 2015 Declaration as support for this assertion.  That exhibit appears to contain documents related to Plaintiff's claim for her Idaho medical expenses and includes many, but not all, of the documents in the Administrative Record.  The exhibit itself provides no information as to when it was delivered.  Plaintiff's counsel's June 24, 2015 Declaration identifies Exhibit E as a "true copy of the 27 pages of documents" the Health Plan had delivered to his office on February 23, 2015.  Stanke June 24, 2015 Decl. at ¶ 7.  I assume the reference to "27" pages is a mix-up between the 102 pages of documents he received on February 23, 2015 and the 27 received via email on March 26, 2015.

56(a). However,

> Traditional summary judgment principles have limited application in ERISA cases governed by the abuse of discretion standard. Where, as here, the abuse of discretion standard applies in an ERISA benefits denial case, a motion for summary judgment is, in most respects, merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply.

Stephan v. Unum Life Ins. Co. of Am., 697 F.3d 917, 929-30 (9th Cir. 2012) (citations and internal quotation marks omitted).  In addition, "judicial review of benefits determinations is limited to the administrative record—that is, the record upon which the plan administrator relied in making its benefits decision[.]"  Id. at 930 (internal quotation marks omitted); see also Haigh v. Constr. Indus. & Laborers Jt. Pension Trust for S. Nev., Plan A & Plan B, No. 2:14-cv-1545-JAD-VCF, 2015 WL 1886666, at *4 n.2  (D. Nev. Apr. 24, 2015) ("An administrative record consists of what the beneficiary or employee presented to the trustee, employer, or plan administrator when appealing the decision to suspend the beneficiary's benefits").

Moreover, if there is a "conflict of interest," explained more fully below, and the "court must decide how much weight to give a conflict of interest under the abuse of discretion standard[,] . . . the court may consider evidence outside the [administrative] record."  Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 970 (9th Cir. 2006) (en banc).  In considering "evidence outside the administrative record to decide the nature, extent, and effect on the decision-making process of any conflict of interest[,]" id., traditional rules of summary judgment apply, and "summary judgment may only be granted if after viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact."  Stephan, 697 F.3d at 930 (internal quotation marks omitted).  "[T]he decision on the merits, though, must

rest on the administrative record once the conflict (if any) has been established, by extrinsic evidence or otherwise." Abatie, 458 F.3d at 970.

## II.  Document Request Claim

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial."  Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation marks omitted).  The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial.  Bias v. Moynihan, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing Celotex, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material.  Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009).  The court draws inferences from the facts in the light most favorable to the nonmoving party.  Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1112 (9th Cir. 2011).

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support

his claim than would otherwise be necessary.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

DISCUSSION

I.  Medical Expense Claim

A.  Standard of Review

A denial of benefits by an ERISA plan administrator is reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  The grant of discretion must be unambiguous.  Abatie, 458 F.3d at 963. In this case, the parties do not dispute that the Health Plan grants the administrator discretionary authority and that this Court reviews the decision to deny the claim for an abuse of discretion.

In reviewing for an abuse of discretion, an ERISA plan administrator's decision "will not be disturbed if reasonable."  Conkright v. Frommert, 559 U.S. 506, 521 (2010) (internal quotation marks omitted).  This reasonableness standard requires deference to the administrator's benefits decision unless it is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts on the record."  Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 676 (9th Cir. 2011) (internal quotation marks omitted); see also Tapley v. Locals 302 & 612 of Int'l Union of Operating Eng'rs-Emp'rs Constr. Indus. Ret. Plan 728 F.3d 1134, 1139 (9th Cir. 2013) (court "equate[s] the abuse of discretion standard with arbitrary and capricious review").  Under this standard, Defendant's interpretation of the plan language "is entitled to a high level of deference and will not be disturbed unless it is not grounded on *any* reasonable basis."  Tapley, 728 F.3d at 1139 (internal quotation marks omitted).

Although Plaintiff agrees that the abuse of discretion standard is appropriate, Plaintiff argues that the Court should review Defendant's decision with additional "skepticism" because of Defendant's "structural conflict of interest."  When "the insurer acts as both funding source and administrator[,]" there is a structural conflict of interest that "must be weighed as a factor in determining whether there is an abuse of discretion."  Salomaa, 642 F.3d at 674 (internal quotation marks omitted).

Plaintiff argues that Defendant is both the plan administrator and funding source and thus, a structural conflict of interest exists.  Defendant, while not expressly denying that it is both the administrator and funding source of the Health Plan, argues that there is "no evidence of a structural conflict before the Court" because Plaintiff relies only on the Internal Revenue Service Form 5500 filed by Defendant for 2013 which apparently does not establish Defendant as the administrator and funding source.[4]  I need not resolve the issue because the summary judgment record fails to establish that this conflict of interest played any role in Defendant's decision to deny the claimed medical expenses.

B.  Discussion

Plaintiff does not dispute that she seeks reimbursement for expenses from non-participating providers and facilities in Idaho.  She does not dispute that Idaho is outside the service area covered by the Health Plan.  She does not dispute that she did not obtain prior authorization before she incurred the expenses.  Instead, she argues that Defendant was obligated

---

[4]  Defendant's argument is most unhelpful to the Court.  Defendant knows whether it is or is not both the plan administrator and the funding source.  It should readily admit its status as to both roles or deny its status with supporting material so that the record is clear.  Simply pointing to what it considers a "lack of evidence" by the Plaintiff on an issue which is readily within Defendant's knowledge does not assist the Court in reaching a resolution.

to pay for her Idaho medical expenses because they were "urgent care" which does not require prior authorization. She further contends that Defendant's decision is entitled to less deference because of various "procedural irregularities."

A. Procedural Irregularities

A "procedural irregularity" in violation of ERISA regulations, "is a matter to be weighed in deciding whether an administrator's decision was an abuse of discretion." Abatie, 458 F.3d at 972. "When an administrator can show that it has engaged in an ongoing, good faith exchange of information between the administrator and the claimant, the court should give the administrator's decision broad deference notwithstanding a minor irregularity." Id. (internal quotation marks omitted). "A more serious procedural irregularity may weigh more heavily." Id. "When an administrator engages in wholesale and flagrant violations of the procedural requirements of ERISA, and thus acts in utter disregard of the underlying purpose of the plan as well," the court gives the administrator's decision no deference and reviews it de novo. Id. at 971.

Plaintiff first argues that the EOBs do not meet ERISA's adverse benefit determination notification requirements and that this affects the deference accorded to Defendant's decision. Specifically, Plaintiff contends that the EOB forms failed to set forth "in a manner calculated to be understood by the claimant (i) [t]he specific reason or reasons for the adverse determination; [and] (ii) [r]eference to the specific plan provisions on which the determination is based[.]" 29 C.F.R. § 2560.503-1(g). She also alleges that the forms failed to describe "the plan's review procedures and the time limits applicable to such procedure, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review[.]" 29 C.F.R. § 2650.503-1(g)(1)(iv). Each of the EOB forms

15 - OPINION & ORDER

cites a reason for why the claim was denied and that reason, noted above as "not a covered benefit" or "non-covered service," is readily understood.    Ex. A to Vaughan May 13, 2015 Decl. at 10-20.  And, each of the EOB forms further refers to an included insert regarding additional information, including appeal rights.  Id.

In her July 10, 2014 letter to Defendant, Plaintiff included only a single page of the EOB forms that the Health Plan had mailed to her.  Thus, these are the only portions of the EOB forms in the Administrative Record.  In response to Plaintiff's argument, Defendant submits a copy of the full three-page EOB form sent to Plaintiff on March 24, 2014 regarding some of the medical services she received in Idaho.  Vaughan July 30, 2015 Decl. at ¶¶ 2; Ex. A to Vaughan July 30, 2015 Decl.  The first page is the same as the one that Plaintiff submitted with her July 10, 2014 letter.  Id.; see also Ex. A to Vaughan May 13, 2015 Decl. at 17.  Page two provides an "Understanding" of the terminology used in the EOB form.  Ex. A to Vaughan July 30, 2015 Decl. at 2.  It also notifies the recipient that additional information regarding benefits, urgent care, exclusions, limitations, etc. is available in the recipient's EOC.  Id.  And, it tells the recipient that he or she can contact the Health Plan, as well as his or her employer group if coverage is received through an employer, for more information.   Id.  The third page addresses appeal rights.  Id. at 3.  It includes information on internal appeals, the claim file, timeframes, how to obtain help, external review, and finally, the right to file a civil action under ERISA.  Id. According to Vaughan, these second and third pages are included with all EOBs sent to claimants, including Plaintiff.  Vaughan July 30, 2015 Decl. at ¶¶ 2, 4.

The page ones of all the EOB forms in the Administrative Record adequately set forth a reason for the determination in a manner calculated to be understood by the claimant.  The

additional pages submitted by Defendant show that Plaintiff was given notice regarding appeal procedures and a right to file a civil action under ERISA. While the three pages together do not appear to include a reference to the "specific plan provisions on which the determination is based," they do inform Plaintiff how to obtain more information, and they point her to the EOC. Defendant substantially complied with its obligations under the rule. Moreover, the record indicates that Defendant and claimant engaged in a good faith exchange of information. See Ex. E to Stanke June 24, 2015 Decl. at 2, 4-10 (June 18, 2014 letter from Plaintiff to Member Relations complaining about the care received along with responsive documentation showing Health Plan staff communicating with Plaintiff as to how to properly present her claim and working with Plaintiff to dismiss the complaint and re-file with sufficient documentation); Ex. C to Vaughan May 13, 2015 Decl. at 6-7 (June 23, 2014 letter to Plaintiff from Mike Hardash, Member Relations Coordinator, thanking Plaintiff for her recent letter, informing her of the need for more specific information, inviting her to call with questions), at 10-11 (July 14, 2014 letter to Plaintiff from Hardash thanking Plaintiff for her recent letter, informing her how the review will proceed, and inviting her to call with questions). Defendant's EOB forms do not evidence a significant irregularity and do not affect the deference otherwise accorded to Defendant's decision to deny Plaintiff's Idaho expense claims.

Next, Plaintiff contends that a second "procedural irregularity" occurred when Defendant refused to comply with her request for information, through counsel, in a November 24, 2014 letter. She contends this violated her right to a "full and fair review" under 29 C.F.R. § 2560.503-1. I reject Plaintiff's argument. The rule she relies on governs "Claims Procedures" and "sets forth minimum requirements for employee benefit plan procedures pertaining to claims

for benefits by participants[.]"  29 C.F.R. § 2560.503-1(a).  Under the rule, employee benefit

plans must establish an appeal procedure for adverse benefit determinations under which there

will be a "full and fair review of the claim" and the adverse determination.  29 C.F.R. §

2560.503-1(h)(1).

The letter from Plaintiff's counsel was sent <u>after</u> the conclusion of the appeals procedure

governed by the regulation.  Plaintiff's July 10, 2014 letter, which included copies of the "adverse

benefit determinations" in the EOBs she had previously received from Defendant, was accepted

by Defendant as an appeal of those adverse determinations.  Up until the August 8, 2014 denial

letter from Defendant, 29 C.F.R. § 2560.503-1 governed Defendant's claim procedures.  After

that date, however, any review of Defendant's decision was external and the regulation no longer

applied because Defendant's claims appeal process was complete.

Plaintiff's third alleged "procedural irregularity" is Kaiser's failure to acknowledge, or its

failure to explain why it discounted, Plaintiff's "difficult circumstances" she articulated in her

July 10, 2014 appeal letter.   She alleges that Kaiser's failure to account for this information

"constitutes a failure to provide a 'full and fair review'" under 29 C.F.R. § 2560.503(1)(h).

Plaintiff cites no law, and I have found none, requiring a plan administrator to consider a

claimant's extenuating personal circumstances in determining whether a claim is covered by the

plan.  The issue is whether the plan language provides for reimbursement.  Sympathy and

personal hardship are not part of the analysis.

Plaintiff fails to establish that there were any procedural irregularities which affect this

Court's standard of review.

/ / /

18 - OPINION & ORDER

B.  Urgent Care

The EOC provides that if the member is "temporarily outside our Service Area, we cover Urgent Care you receive from a Non-Participating Provider or Non-Participating Facility if we determine that the Services were necessary to prevent serious deterioration of your health and that the Services could not be delayed until you returned to our Service Area."  Ex. E to Vaughan May 13, 2015 Decl. at 57; Ex. F to Vaughan May 13, 2015 Decl. at 59.  "Urgent Care" is "[t]reatment for an unforeseen condition that requires prompt medical attention to keep it from becoming more serious, but that is not an Emergency Medical Condition."  Ex. E to Vaughan May 13, 2015 Decl. at 44; Ex. F to Vaughan May 13, 2015 Decl. at 47.  It is undisputed that if the service meets the Health Plan's definition of "Urgent Care," no prior authorization is required for the services to be covered by the Health Plan.

Plaintiff argues that the treatment she received in Idaho for her spinal compression fractures and anxiety following the death of her father were unforeseen conditions requiring prompt medical attention to keep them from becoming more serious and to prevent serious deterioration of her health, and which could not have been delayed until her return to Oregon. She contends that Defendant's construction of the Health Plan to exclude the services she received from being considered "Urgent Care" under the Health Plan's own definition, is unreasonable.

The July 10, 2014 letter Plaintiff sent seeking payment for the Idaho medical expenses explains that following the delivery of her baby on October 13, 2013, Plaintiff experienced back pain.  Ex. A to Vaughan Decl. at 1.  She notes her efforts to have the problem adequately diagnosed and treated in what appear to be Participating Facilities by Participating Physicians

19 - OPINION & ORDER

and Participating Providers in Oregon.  Id. at 1-2.  Plaintiff's letter makes clear that she was

dissatisfied with the services and care she received and that she continued to experience severe

pain.  Id. at 1-6.

> She wrote this explanation of her decision to seek treatment in Idaho:
>
> With a history of osteoporosis and compression fractures, I am fully aware that
> timeliness and proper follow up care are critical for a good outcome.  As my
> husband works out of town 4 days a week, every week, and I was left with no
> information in regards to follow up, my sister took the lead on my care and
> contacted a colleague of hers from the Spine Institute of Idaho who said she would
> see me right away.  We coordinated for my sister to fly to Portland the next day,
> Saturday, November 23 and then fly with the baby and me back to Idaho so that
> my parents could help take care of me and the baby and I could see a provider
> right away to get more information on what we were looking at in regards to my
> back.

Id. at 3.

Plaintiff spent the next several months in Idaho, apparently not returning to Portland until

sometime in mid to late March.  Id. at 3-6.  She received medical services in Idaho the entire

time.  Id.  Additionally, during this time in Idaho, she took her infant son to a pediatrician for his

eight-week check-up and vaccines.  Id. at 3.  She took him again in February for a four-month

check-up and vaccines.  Id. at 4.

While Plaintiff was in Idaho staying with her parents, her father died unexpectedly in his

sleep.  Id. at 3.  Plaintiff saw a local therapist to help "work through the Post-Traumatic Stress

associated" with events surrounding her father's death, including that Plaintiff was the one who

called 911.  Id. at 4.

> In her letter, Plaintiff requests reimbursement for all of these services:
>
> I am hereby requesting full reimbursement for all medical bills that were sustained
> while obtaining proper medical care and follow up in Idaho, for myself, and my

20 - OPINION & ORDER

son, . . . , including, but not limited to the MRI, custom brace, and mental health services, where a request for referral was made to Kaiser and denied due to services being offered in the service region.  There was no other viable option then [sic] to seek immediate care outside the service region, staying in Portland alone with a newborn infant to care for when I was largely unable to even care for myself, wasn't practical and would have been detrimental to my health.  My family was unable to come to Portland to help care for the baby and me, as they both work and are active in their community, and I was physically unable to travel back to the service region to receive care through Kaiser Permanente as suggested.

Id. at 5.

Plaintiff argues that she was forced to seek treatment in Idaho because the back fracture necessitated that she rely on her family to care for her newborn.  She asserts that without the treatment she received, her condition would have deteriorated.  She further contends that the acute anxiety she suffered after her father's unexpected death also falls within the Urgent Care definition.

Defendant argues that Plaintiff's own description of her decision to seek treatment in Idaho establishes that her condition was not "unforeseen" as required to be Urgent Care.  Because she had already been diagnosed with a compression fracture, treatment in Idaho was not for an "unforseen condition."  Furthermore, Defendant notes, the EOC provides for pre-service claims and appeals, including those sought on an urgent basis.  Ex. E to Vaughan May 13, 2015 Decl. at 90-91; Ex. F to Vaughan May 13, 2015 Decl. at 89-92.  Thus, Plaintiff could have sought a pre-service determination regarding her services in Idaho and Plaintiff failed to use this procedure for her back-related treatment.[5]

---

[5] Although my review of this claim is limited to the Administrative Record, I note that other documents in the summary judgment record suggest that Plaintiff called Kaiser on the morning of November 26, 2013, after she was already in Idaho, and the day after she received her first x-rays there, to request that Kaiser pay for the medical services in Idaho.  See Ex. A to

I agree with Defendant and conclude that its interpretation of the "Urgent Care" definition in the Health Plan to exclude Plaintiff's claims was not unreasonable. The Court is sympathetic to Plaintiff's circumstances in attempting to care for a newborn while in severe pain and while simultaneously being dissatisfied with the health services she was receiving from her Health Plan. Nonetheless, that does not mean that the treatment she obtained in Idaho was for an "unforeseen condition." In fact, it is obvious she went to Idaho at least in part to treat the condition, making it known, not unforeseen. While other options which may have allowed her to receive care at Kaiser in Oregon were presumably less practical or palatable or more expensive, they likely existed. The Administrative Record discloses that Plaintiff went to Idaho because she needed help caring for her baby and she was unhappy with the care she received at Kaiser. That combination of circumstances does not make the treatment in Idaho related to an unforeseen condition. This is true even for the second compression fracture diagnosed in December. It was not unreasonable for Defendant to consider services for the second fracture as part of the previously-diagnosed back problem and to treat the claims for it similarly to those related to the first fracture.

I reach the same conclusion for the pediatrician charges for Plaintiff's son and the counseling charges for Plaintiff's acute anxiety. The Administrative Record indicates that the

Stanke June 24, 2015 Decl. at 1-3 (showing an inquiry at 8:42 a.m. on November 26, 2013 regarding a referral request and a response from Kaiser that Plaintiff needed to speak with her primary care provider; showing a second inquiry about ten minutes later regarding seeing an outside provider and a response from Kaiser telling her she could appeal or send in a "pre service request" to Member Relations. Plaintiff stated she needed it "this morning" to which she was told she could fax over the request). This evidence shows that although Plaintiff may have initially sought an outside referral, she was denied and then did not pursue her available rights by filing an appeal or a more formal pre-service request, even though she continued to seek treatment in Idaho for several months.

two charges for Plaintiff's son were related to well-baby check-ups and vaccines.  Neither service

fits the definition of "Urgent Care."  There is no evidence in the Administrative Record

suggesting that Plaintiff consulted with her Kaiser pediatrician to make a determination that these

visits were urgent in any way and could not wait until Plaintiff returned to Oregon.

Additionally, while this Court has no doubt that Plaintiff's father's death was a traumatic

experience, and it was unforeseen, nothing in the Administrative Record establishes that

Plaintiff's condition needed urgent treatment to prevent "serious deterioration" of her health and

that counseling could not be delayed until she returned to Oregon.  And, even if I examine

documents outside of the Administrative Record, I cannot conclude that the Health Plan

unreasonably denied her request that the counseling fees be paid.  Plaintiff appears to have a

history of anxiety disorder.  Ex. A to Stanke Decl. at 15.  On January 7, 2014, she called Kaiser

and requested an outside referral for therapy.  Id. at 12, 14.[6]  She denied having thoughts of

harming herself or someone else in the last two weeks.  Id.  She described her symptoms as

insomnia, low energy, concentration problems, and feeling overwhelmed.  Id. at 15.  She noted

that her anxiety triggered stomach aches.  Id.  Although Plaintiff had a history of outpatient

therapy for depression and anxiety, she had no history of psychiatric hospitalizations.  Id. at 14.

Two days later, on January 9, 2014, Kaiser denied her "pre-service claim" for therapy by

---

[6]  The time of the call was 6:45 a.m.  Ex. A to June 24, 2015 Stanke Decl. at 14.  In
response, two different Health Plan providers contacted later in the day to discuss her situation.
Id. at 12, 14.  She explained she had an increase in depression and anxiety symptoms related to
her back and the traumatic death of her father the previous month.  Id. at 14.  She erroneously
reported that "Kaiser sent her to Boise Idaho Spine clinic" for treatment of her back condition.
Id.  In the afternoon of January 7, 2014, her request was sent to "UM" for review.  Id. at 15.  She
was told that case reviews can take seven to ten days.  Id.  Nonetheless, she saw the therapist the
same day she called, knowing that the therapy services may not be covered.

the outside provider.  Id. at 5-6. Kaiser explained that a reviewing physician determined that the

services requested were not emergent and that appropriate services were available in the service

area.  Id.  Given the information Plaintiff provided to Kaiser, the denial was not unreasonable.

While Plaintiff's anxiety was likely distressing, neither the Administrative Record nor documents

outside the Administrative Record, establish that Defendant unreasonably determined that

Plaintiff's anxiety did not require immediate treatment.

Plaintiff relies heavily on the fact that Defendant paid two Idaho-treatment claims.  The

Administrative Record shows that Kaiser paid $222 for a service received December 2, 2013.

Ex. A to Vaughan May 13, 2015 Decl. at 25.  Although not entirely clear, it appears that the

charge was for an outpatient office visit.  Id.  Kaiser also paid $78.75 for what appears to be an x-

ray taken on February 19, 2014.  Id. at 27.  Plaintiff argues that with these payments, Defendant

has waived its right to deny the other Idaho expenses.  She suggests that the payment of two

Idaho medical expenses demonstrates that Defendant's denial of the other Idaho expense claims

was arbitrary.

Although these two payments could suggest some inconsistency by Defendant as to how

it handled Plaintiff's Idaho expenses, that is not enough to support a conclusion that Defendant's

actions in denying the other Idaho claims was unreasonable.  Given that there were only two paid

claims out of more than at least a dozen charges from the Spine Institute of Idaho (and

approaching two dozen Idaho-based charges at issue in the EOBs), see Ex. A to Vaughan May

13, 2015 Decl. at 10-47, the two paid claims are viewed as isolated instances.

The Administrative Record reveals very little about these claims and thus, they are not

well explained.  Under the deferential review accorded to Defendant, two paid claims out of

dozens do not imply arbitrary conduct by Defendant.  It proves too much of a reach to conclude that Defendant acted arbitrarily or capriciously in denying the bulk of the Idaho claims just because Defendant paid the two claims.

Moreover, given that Plaintiff urges the Court to go outside of the Administrative Record based on the presence of the structural conflict of interest, I note that in a March 26, 2015 response to inquiries by Plaintiff, Defendant noted that the December 2, 2013 office visit charge was paid, and the prior authorization for out of area services waived, because the provider included the term "urgent" in the bill and there were no other claims on history paid for that provider as of that date.  Ex. G to Stanke June 24, 2015 Decl. at 4.  The payment for the second charge was in error.  Id.  Plaintiff did not address these "paid" charges in her July 10, 2014 letter which complained only of denied charges.  Accordingly, Defendant's August 8, 2014 response to Plaintiff's July 10, 2014 letter provided no explanation for the paid charges.  As a result, nothing in the Administrative Record reveals one way or the other why these charges were paid and others were not.  Given that the material outside of the Administrative Record fails to show that any conflict of interest affected Defendant's decision, under the deferential abuse of discretion review, I find that Defendant's denials of the Idaho charges was not unreasonable simply because it paid two of the charges.

In summary, none of Plaintiff's procedural irregularity arguments have merit or affect the deferential standard of review given to Defendant's decision.  Considering the entire summary judgment record, there is no basis for determining that Defendant's conflict as plan administrator and funding source contributed to its decision to deny Plaintiff's claims.  Defendant reasonably interpreted the plan language in concluding that the claims for which Plaintiff sought payment

25 - OPINION & ORDER

were not reimbursable because they occurred out of the service area, were not pre-authorized, and were for treatment by non-participating providers at non-participating facilities for non-urgent conditions.  The fact that Defendant paid two of the more than a dozen claims does not create an inference of unreasonable, arbitrary conduct.  I grant summary judgment to Defendant, and deny summary judgment to Plaintiff, on the medical expense claim.

II.  Document Request Claim

ERISA requires a plan administrator to provide, upon written request of any participant or beneficiary, "a copy of the latest updated summary [] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."  29 U.S.C. § 1024(b)(4) (further allowing reasonable fees to be charged for provision of these documents).  ERISA allows beneficiaries to file suit if the ERISA plan administrator does not provide the requested documents within thirty days of the request.  29 U.S.C. § 1132(c)(1).  A plan administrator who fails to comply with a request for documents which the statute requires the plan administrator to provide, may, in the Court's discretion, be subject to penalties of up to $110 per day.  Id.; 29 C.F.R. § 2575.502c-1 (increasing statutory fee from $100 to $110 per day).

Plaintiff argues that Defendant must pay the maximum statutory penalty because of Defendant's deliberate, explicitly-stated refusal to provide ERISA-required documents to Plaintiff unless she initiated litigation.  Plaintiff characterizes Defendant's actions as a "brazen defiance of its duties" as plan administrator given that it insisted Plaintiff file a lawsuit simply to receive documents that federal law mandates Defendant provide.  She argues that this is "smoking gun evidence of bad faith."  Pl.'s Mem. at 15.  She further argues that she was

prejudiced by the failure to provide documents because she was forced to initiate litigation "in the dark."  She seeks a total of $126,610 in penalties.[7]

Defendant contends that (1) Plaintiff's request for penalties must be denied in its entirety because she made her request to the Health Plan, not the plan administrator; (2) the bulk of the requested documents are not subject to the statutory disclosure obligations; (3) even if Plaintiff were entitled to a discretionary penalty, the amount at issue is not determinable on summary judgment because there are issues of fact; and (4) the present record before the Court does not establish that a penalty should be awarded.

Defendant cannot escape responsibility because Plaintiff's counsel's September 11, 2014 request for documents was made to the Health Plan and not to the plan administrator.  Defendant is correct that the ERISA statute at issue applies only to the plan administrator.  29 U.S.C. § 1024(b)(4); Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223, 1234 (9th Cir. 2000).  There is no dispute that Defendant, not the Health Plan, is the plan administrator.

Nonetheless, several facts combine to suggest that discerning the difference between the Health Plan and Defendant is not obvious and that in this case, Defendant should be held accountable for not providing the documents.  Rich, who authored the August 8, 2014 denial letter to Plaintiff, wrote to Plaintiff on stationery that states in large type "KAISER PERMANENTE."  Ex. B to May 13, 2015 Vaughan Decl. at 1.  In the upper right corner, in

---

[7]  As set out in her Memorandum, she seeks $93,940 for seven separate plan-governing documents, each subject to a $110/day penalty, for a total of $770/day withheld from October 12, 2014 through February 11, 2015 which she represents is 122 days.  She seeks an additional $14,630 for the 102-page "claim file document" withheld from October 12, 2014 through February 22, 2015 which she represents is 133 days, at $110/day.  Finally, she seeks $18,040 for the 27-page "claim file document" withheld from October 12, 2014 through March 25, 2015 which she represents is 164 days, at $110/day.  Pl.'s Mem. at 17.  The total is $126,610.  Id.

much smaller type, appears the Health Plan's name: "Kaiser Foundation Health Plan of the Northwest." Id. Although the designation referring to the Health Plan suggests that it, not the plan administrator, reviewed Plaintiff's July 10, 2014 appeal, the "Kaiser Permanente" designation does not denote whether the decision was made by the Health Plan or the plan administrator, making the entity responsible for the decision somewhat ambiguous.

Rich then directed Plaintiff to "Member Relations" and "Membership Services," presumably both departments within the Health Plan, to obtain copies of "the actual benefit provision, guideline, protocol or other similar criterion on which the denial decision was based," as well as a copy of the applicable EOC, at no cost to Plaintiff. Id. at 4. This is essentially what Plaintiff did in her counsel's September 11, 2014 letter. Moreover, Plaintiff's counsel expressly requested Rich to notify him immediately if "Kaiser Permanente" was not the plan administrator, and to provide him with the correct plan administrator. Neither the Health Plan nor Defendant responded to that specific inquiry, creating the impression that the letter requesting documents was addressed to the proper entity. Defendant may technically be correct that Plaintiff's document request was not addressed to the plan administrator and thus, there was no obligation to provide the documents. However, given Defendant's structure of using virtually the same name for both the Health Plan and the plan administrator, given that the Health Plan invited Plaintiff to request documents from the Health Plan itself, and given that Plaintiff's counsel expressly asked the Health Plan to affirmatively act if it was not the plan administrator, I do not deny Plaintiff's claim on this basis.

I agree with Defendant, however, that Defendant's failure to provide many of the documents requested by Plaintiff in the September 11, 2014 letter is not subject to statutory

28 - OPINION & ORDER

penalties.  The statute is limited to "a copy of the latest updated summary [] plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."  29 U.S.C. § 1024(b)(4). Plaintiff cites ERISA regulations requiring that a claimant be provided, "upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits."  29 C.F.R. § 2560.503-1(h)(2)(iii).  She contends that Defendant may be penalized for failing to provide these documents as well as those recited in the statute.

There are two problems with Plaintiff's reliance on this regulation.  First, by its own terms, 29 C.F.R. § 2560.503-1 applies only to the internal claims administration and appeals process.  As previously explained above, the title of the regulation is "Claims Procedure" and in the section describing its scope and purpose, the regulation provides that it "sets forth minimum requirements for employee benefit plan procedures pertaining to claims for benefits by participants and beneficiaries."  29 C.F.R. § 2560.503-1(a).  Once Kaiser concluded its review of Plaintiff's appeal and issued its determination on August 8, 2014, this regulation no longer applied.

Second, several Judges in this Court have concluded, consistent with several federal circuit courts, that 29 U.S.C. § 1132(c) does not impose penalties for a violation of 29 C.F.R. § 2560.503-1.  Bielenberg v. ODS Health Plan, Inc., 744 F. Supp. 2d 1130, 1143 (D. Or. 2010) (citing cases from the Third, Sixth, Seventh, & Eighth Circuits); Metcalf v. Blue Cross Blue Shield of Mich., No. 03:11-cv-01305-ST, 2013 WL 4012726, at *23  (D. Or. Aug. 5, 2013) (adhering to Bielenberg and citing a case from the First Circuit as well as the Third, Sixth,

29 - OPINION & ORDER

Seventh, & Eighth Circuits); Konty v. Liberty Life Assur. Co. of Boston, No. 03:12-cv-00467-KI, 2012 WL 5363545, at *3-4 (D. Or. Oct. 30, 2012) (following Bielenberg).  I see no reason to depart from these decisions and thus I conclude that Plaintiff cannot seek penalties for documents subject only to the regulation.  The statutory penalties are available only for failing to provide the documents specified in section 1024(b)(4).

As a result, only the untimely provision of documents responsive to categories (3) and (4) of Plaintiff's counsel's September 11, 2014 letter is subject to the penalties.  As described by Plaintiff in her Memorandum, and as seen in Exhibits A and E to Stanke's June 24, 2015 Declaration, the 102 pages provided on February 23, 2015, and the twenty-seven pages provided on March 26, 2015, do not come within the list of documents in section 1024(b)(4).  See Fergus v. Standard Ins. Co., 27 F. Supp. 2d 1247, 1252 (D. Or. 1998) ("By its terms, this section of ERISA [referring to 29 U.S.C. § 1024(b)(4)] does not apply to documents regarding a particular claim").

Plaintiff states that on February 12, 2015, defense counsel provided seven plan-governing documents to Plaintiff.  Pl.'s Mem. at 15.   Earlier in her Memorandum, she notes that they are: (1) the Plan's 2013 5500 forms; (2) the 2013 and 2014 EOCs; (3) a "Benefits in Brief" pamphlet; (4) a collective bargaining agreement; (5) a summary of benefits and coverage; and (6) a Summary Plan Description.  Id. at 6.  From these descriptions, it appears that the collective bargaining agreement and the summary plan description are subject to section 1024(b)(4).  I assume the 5500 forms are not subject to the statute because they were requested in category (1) of Plaintiff's counsel's September 11, 2014 letter which, unlike categories (3) and (4), does not mimic the statutory language.  As to the other documents provided on February 12, 2015, it is not

30 - OPINION & ORDER

clear whether they fit the statutory list of documents or not. Regardless, because, as explained more fully below, I decline Plaintiff's invitation to award the statutory daily penalty as to each of the seven documents, the fact that some of them may not be subject to the penalty is of no consequence.

In summary, many of the documents requested in Plaintiff's counsel's September 11, 2014 letter are not subject to a penalty for failure to timely provide them. Nonetheless, Plaintiff did request some documents which are subject to the penalty and there is no dispute that they were not provided until February 12, 2015.

In assessing the penalty, it is important to consider several facts and arguments. First, Plaintiff's July 10, 2014 letter raised three discrete issues: (1) an appeal of the EOBs denying medical expenses for care she received in Idaho; (2) a complaint about the care she received for her back pain from Kaiser in Oregon; and (3) a claim for compensatory damages for lost wages and for pain and suffering regarding the allegedly poor care. With the August 8, 2014 letter from Rich, the first and second of these issues was concluded, at least from Kaiser's perspective. That means that if Plaintiff was dissatisfied with Kaiser's response to her request for reimbursement or its response to her quality of care complaints, there was nothing more within Kaiser for her to pursue as to these issues. While that may not have terminated the obligation to provide certain requested documents under ERISA, it establishes some context for Kaiser's receipt of Plaintiff's September 11, 2014 document requests.

Plaintiff's counsel's September 11, 2014 letter undoubtedly and clearly was directed at the claims reimbursement issue. However, at least one category of the requested documents indicated that her document requests may have also been targeted to her complaint about the

31 - OPINION & ORDER

quality of care, which in turn implicates her request for pain and suffering compensatory damages.  In category (2) of the September 11, 2014 list of documents, Plaintiff's counsel sought documents and information related to several persons that Rich identified in her August 8, 2014 letter as having been consulted in response to Plaintiff's complaint about the quality of care she received from Kaiser.  Ex. B to June 24, 2015 Stanke Decl.; Ex. B to Vaughan May 13, 2015 Decl. at 2-3 (August 11, 2014 letter in which Rich notes that as part of her review, Rich shared concerns with the Department Administrators and Chief Physicians for the Rockwood Internal Medicine, Emergency Department, and Sunnybrook Orthopedic Clinic; further explaining that the physicians who participated in the review found no clinical concerns, including regarding after an orthopedics referral in November 2013 and in orthopedic appointment scheduling in March 2014).

Of the three issues Plaintiff raised in her July 10, 2014 letter, only the claims reimbursement issue is subject to ERISA at all.  The quality of care and compensatory damages issues are outside of ERISA's purview.  Thus, the fact that the September 11, 2014 letter went beyond the information pertinent to the claims reimbursement issue may have mislead the Health Plan into thinking it had no obligation to provide at least some of the requested information.  When Risk Management sent the November 24, 2014 letter to Plaintiff's counsel, it was addressing only the compensatory damages claim.  The statement in that letter that the "additional data" Plaintiff requested would not be provided because, should she proceed with litigation, it would part of the discovery process, was not inappropriate to the extent the "additional data" referred to was related to the quality of care/compensatory damages issues.

Second, while I refuse to excuse Defendant's failure to provide responsive documents

because Plaintiff did not request them from the actual plan administrator, this is still relevant to the assessment of a penalty. That is, if the request went to the wrong entity, it is unclear what happened to it or where it was routed. Additionally, Plaintiff's counsel presumably was aware of Kaiser's responsibility to provide the requested documents within thirty days and thus, by October 12, 2014, Plaintiff's counsel should have known they were overdue. Nonetheless, there is no record of Plaintiff or her counsel contacting Kaiser to inquire about the documents. This is so even though Plaintiff had Rich's direct line and an open invitation to call her with questions.

Third, Plaintiff herself had access to some of the requested documents and did not need to rely on Kaiser to provide them to her. It is undisputed that she had access to the Summary Plan Descriptions. Relevant portions of the EOCs had been provided to her with the August 8, 2014 letter from Rich. And Rich's letter told her how to obtain, at no cost to her, a copy of the applicable EOCs.

Fourth, Plaintiff argues that she was prejudiced by Defendant's failure to timely provide the documents. She states that she was forced to initiate litigation "in the dark," meaning without the documents she was entitled to receive which would have (1) informed her as to the correct plan administrator, sponsor, and insurer entity names; (2) informed her regarding the EOC definition of Urgent Care and the Health Plan's urgent care coverage outside of the service area; (3) given her the entire EOC so she could evaluate the context of the provisions Defendant relied on in denying her claim for the Idaho medical expenses; and (4) allowed her counsel to review the Administrative Record regarding her denied medical expenses claim to evaluate the likelihood of her prevailing on her ERISA claim. She contends that without these documents, she was forced to invest time, effort, and money to initiate litigation in order to gain access to

what she was legally entitled to receive outside of litigation.

I agree that Plaintiff suffered some prejudice, but I do not find the prejudice to have burdened Plaintiff to the degree she asserts.  First, as explained above, no penalties may be assessed for failure to provide the claim documents contained in the Administrative Record.  In evaluating the prejudice as a factor in determining the appropriate penalty, failure to provide those documents is not relevant.  Second, while Plaintiff did initially name the wrong defendant in this action and could have properly named Defendant plan administrator had she timely obtained the plan-related documents, the Health Plan promptly filed an Answer to the Complaint, the Health Plan's counsel provided documents to Plaintiff's counsel before that Answer was filed, and the Health Plan stipulated to a substitution of party without objection.  The fact that Plaintiff did not properly name the correct Defendant at the outset has made no difference to this litigation and no prejudice to Plaintiff appears as result of that error.

Third, Plaintiff would have benefitted from the complete EOC to both review the urgent care-related provisions and to assess the context of the provisions Kaiser relied on in denying her Idaho medical expenses claim.  Still, Plaintiff herself could have obtained a copy of the EOC as instructed by Rich in the August 8, 2014 letter.  This does not excuse Defendant's failure to timely provide the document, but it does influence the degree of prejudice Plaintiff alleges she suffered.  Finally, Defendant's failure to timely provide the documents does not appear to have caused Plaintiff to hire counsel as she was already represented by counsel in September 2014 as noted in the September 11, 2014 letter requesting the documents.  Defendant's failure did affect the ability of Plaintiff and her counsel to fully assess the viability of her claim, however, as well as perhaps the ability to negotiate a resolution short of actual litigation.

34 - OPINION & ORDER

In exercising discretion to determine the appropriate penalty, the Court should consider the following factors: (1) bad faith or intentional conduct on the part of the administrator; (2) the length of the delay; (3) the number of requests made and documents withheld; and (4) the existence of any prejudice to the participant or beneficiary. Hemphill v. Estate of Ryskamp, 619 F. Supp. 2d 954, 976 (E.D. Cal. 2008) (relying on Romero v. SmithKline Beecham, 309 F.3d 113, 120 (3rd Cir. 2002), modified sub nom. Hemphill v. Pers. Rep. of Estate of Ryskamp, No. CVF-05-1319 OWW/SMS, 2008 WL 1696722 (E.D. Cal. Apr. 8, 2008). While a relevant factor, prejudice is not required to sustain a claim for penalties. Id. Similarly, the plan administrator's bad faith or lack thereof is not determinative. Id. ("'Although an employer's good faith and the absence of harm are relevant in deciding whether to award a statutory penalty, neither a defendant's good faith nor the absence of actual injury to the plaintiff precludes the award of a statutory penalty.'") (quoting Brown v. Aventis Pharms, Inc., 341 F.3d 822, 825 (8th Cir. 2003) (brackets and ellipsis omitted)).

Based on the preceding discussion, I find that $70 per day is an appropriate penalty. Plaintiff suffered some prejudice but was not prevented from timely bringing her claims in this action. Plaintiff's internal appeal was complete and although she could have perhaps negotiated a settlement before filing the Complaint, litigation or the threat thereof was her only recourse for the denied claims. She may have been hampered in assessing the viability of her claim going forward, but she was not denied the ability to meaningfully pursue her claim. See Barboza v. Cal. Ass'n of Prof'l Firefighters, 594 F. App'x 903, 906 (9th Cir. 2014) (district court did not abuse its discretion in declining to award statutory penalties for plan administrator's failure to furnish requested documents when district court determined that the plaintiff "was not prejudiced

35 - OPINION & ORDER

or denied the ability to meaningfully participate in the appeals process").

As suggested above, I find that the record does not support a finding of bad faith by Defendant.  The fact that Plaintiff initially pursued multiple types of claims, that the September 11, 2014 letter requested some documents relevant to claims not subject to an ERISA action, that the September 11, 2014 letter was not sent to the plan administrator (through no fault of Plaintiff or her counsel), and that the statement about obtaining the documents through litigation was sent by the Risk Management Department regarding her non-ERISA claim for pain and suffering compensation, weigh against a finding that the failure to timely provide documents was an intentional act designed to harm Plaintiff.

The length of the delay was relatively short by comparison to other cases.  In less than two weeks after the case was filed, defense counsel sent Plaintiff the plan-related documents, even before the Health Plan filed an Answer.  Under the statute, those documents should have been provided by October 12, 2013.  They were provided four months later without the necessity of an additional request.  In contrast, in Hemphill, the documents had not been provided for years.  Hemphill, 619 F. Supp. 2d at 976 (noting, in a 2008 opinion that "Plaintiff has been attempting since 1994 to obtain plan documents and information"); see also Phipps v. Tileco Emp. Ben. Plan, No. CIV S-11-0208 JAM, 2011 WL 6003194, at *4 (E.D. Cal. Nov. 30, 2011) (in awarding $100/day statutory penalty, district court noted that document requests had been made 600 days earlier, the documents had still had not been provided, and that the defendant had failed to appear in the action).

Further, Plaintiff made no attempt to follow-up with Rich during the approximately six weeks between the October 12, 2014 date the documents were due to Plaintiff and the November

24, 2014 letter stating they would be provided in litigation.  In arriving at a penalty of $50/day, the Hemphill court noted that the "[p]laintiff's requests for plan documents and information were made at widely spaced intervals and not followed up with diligence when no response or limited response was made." Hemphill, 619 F. Supp. 2d at 976.  Plaintiff here could have been more diligent in seeking the documents.

Finally, Plaintiff argues that Defendant should be separately penalized for each document, a practice Defendant refers to as "stacking." I agree with Plaintiff that the case Defendant relies on is not on point.  In Gregory v. Goodman Mfg. Co., No. 4:10-cv-23, 2012 WL 685298, at *7 (E.D. Tenn. Jan. 13, 2012), adopted 2012 WL 685283 (E.D. Tenn. Mar. 2, 2012), the court refused to award separate penalties based on separate requests for the same document.  Here, Plaintiff seeks penalties for the single request made on September 11, 2014.  She does not base her request on multiple requests for the same document.

Plaintiff cites to cases in which courts have awarded a daily penalty per document.  E.g., Thompson v. Transam Trucking, Inc., 750 F. Supp. 2d 871, 890-91 (S.D. Ohio 2010) (court awarded $50/day per document but without discussion of the "per document" issue); Dies v. Provident Life & Accident Ins. Co., No. 3:04-0113, 2006 WL 208878, at *9 (M.D. Tenn. Jan. 25, 2006) (court awarded $25/day per document but without discussion of the "per document" issue). The courts in these cases did not discuss the daily penalty "per document" issue and notably, they did not award the maximum statutory penalty per day for each document.  Instead, these courts awarded one-half or less of the statutory maximum per day per document.  In contrast, here, Plaintiff seeks the statutory maximum per day for each document.  I do not find this warranted in this case or clearly required by the statute.

37 - OPINION & ORDER

After providing that a plan administrator who fails to provide documents within the requisite thirty-day period is subject to discretionary penalties, the statute provides that "[f]or purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation." 29 U.S.C.A. § 1132(c)(1). That provision suggests that any so-called "stacking" of penalties is appropriate on a per participant basis; it does not address penalties on a per document basis. See Bartling v. Fruehauf Corp., 29 F.3d 1062, 1068-69 (6th Cir. 1994) (plaintiffs argued that the district court erred when it failed to impose the statutory penalty for the failure to timely disclose requested documents "on a per participant basis"; appellate court concluded that while the "purpose of the statute was to induce administrators to timely provide participants with plan documents, and to penalize failures to do so[,]" because the district court had discretion to award no penalty at all, the plaintiffs could not argue that the total penalty, calculated at $1.28 per document per day, was so small as to be an abuse of discretion).

Although Plaintiff's September 11, 2014 letter requested several plan-related documents, I view this is a single request by a single individual. The responsive documents, for which penalties are allowed, were provided collectively on February 12, 2014. They should be considered as a whole. Therefore, based on a $70 per day penalty, and considering the time period of October 12, 2014 to February 11, 2015 for a total of 122 days, the statutory penalty is $8,540. Alternatively, even if it could be considered an abuse of discretion to fail to award the daily penalty per document, I reduce the daily penalty to $10 per day. Under that alternative

38 - OPINION & ORDER

calculation, the award is the same based on seven documents for $70/day for a total of 122 days.[8]

CONCLUSION

Plaintiff's motion for summary judgment [14] is denied on the medical expense reimbursement claim and granted in part on the document request claim. Defendant's motion for partial summary judgment [7] is granted. Plaintiff is awarded $8,540 in statutory penalties.

IT IS SO ORDERED.

Dated this _____ day of _____, 2015

_____
Marco A. Hernandez
United States District Judge

---

[8] This assumes that all seven documents provided to Plaintiff on February 12, 2014 are subject to statutory penalties.

39 - OPINION & ORDER